UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MEDLIANT INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Civil Action No. 1:23–cv–00203–MAC |
| v. | ) | |
| | ) | |
| KATRINA PONCE DE LEON, | ) | |
| | ) | |
| *Defendant.* | ) | |

**MEDLIANT INC.'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

FACTUAL BACKGROUND ..................................................................................................... 1

ARGUMENT & AUTHORITIES ........................................................................................... 2

I.     Defendant's Motion to Dismiss for Forum Non Conveniens Should be Denied. .......... 2

    A.   Legal standard. ............................................................................................... 2

    B.   The forum-selection clause is permissive. ....................................................... 3

    C.   If, however, the Court concludes the forum-selection clause is mandatory, the motion should still be denied. ....................................................................... 6

II.    Defendant's Motion to Dismiss for Failure to State a Claim Should be Denied. .......... 9

    A.   Legal standard. ............................................................................................... 9

    B.   Federal law does not prohibit Medliant from recovering immigration costs and expenses as breach of contract damages. ...................................................... 10

    C.   Defendant's unconscionability affirmative defense is procedurally premature and substantively without merit. .................................................................. 11

    D.   Defendant's liquidated damages argument is also procedurally premature and substantively without merit. ....................................................................... 14

    E.   The Agreement is not void against public policy. ......................................... 16

CONCLUSION ...................................................................................................................... 19

CERTIFICATE OF SERVICE ............................................................................................. 20

## **FACTUAL BACKGROUND**

The plaintiff, Medliant Inc. ("Medliant"), provides employment-related placement services throughout the United States, including to hospitals and other healthcare providers in southeast Texas. *See* Doc. 1, PageID #2, ¶ 5. One of the many reasons why Medliant is so successful in providing placement services to its healthcare clients is primarily due to its willingness to incur upfront costs in securing quality employees from around the world, including employees from the Republic of the Philippines. *Id*. at ¶ 6. Medliant sponsors each international employee in the immigration process and pays for all costs and expenses associated with securing a third preference employment-based visa, also known as an EB-3 visa. *Id*. at ¶ 7. Medliant also pays for all travel to the United States for each employee, one month's living accommodations for each employee, and reimburses each employee for all federal and state license-related application fees and expenses. *Id*. at ¶ 8.

On January 18, 2022, Medliant and the defendant, Katrina Ponce de Leon ("Defendant"), entered into an Agreement for Employment (the "Agreement") for Defendant to come to the United States from the Philippines to work as a full-time registered nurse for Medliant at Baptist Hospitals of Southeast Texas. *Id*. at ¶ 9; Doc. 8–1, PageID #49.[1] The Agreement committed Medliant to sponsor and pay for processing of Defendant's EB-3 Green Card, travel expenses to Texas, one month's living accommodations, and to reimburse Defendant for all federal and state

---

[1] The Court "is permitted to look at evidence in the record beyond those facts alleged in the complaint[] and its proper attachments" in connection with a challenge to venue. *See Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2018 WL 1964180, at *2 (E.D. Tex. Apr. 25, 2018). However, with respect to a motion to dismiss for failure to state a claim, the Court may only review documents attached to the motion that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P., v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Defendant attaches two documents to its motion, the Agreement and the demand letter sent to Defendant prior to filing suit. *See* Docs. 8–1, PageID ##49–54 (Agreement) and PageID #56–57 (demand letter). Medliant disputes the demand letter is "central to the claim," but it is immaterial to the Court's consideration of the motion to dismiss for failure to state a claim.

license-related application fees and expenses. Doc. 1, PageID #2, at ¶ 10. In exchange, Defendant agreed to work 5,200 straight-time hours upon arrival to the United States. *Id*. at ¶ 11. If Defendant left Medliant before fulfilling her obligation, she agreed to pay Medliant liquidated damages because she acknowledged Medliant would not have made a reasonable amount of profit in relation to Medliant's investment of time, effort, and money in promoting, training, testing, and licensing and otherwise assisting Defendant to become a United States employee. *Id*., PageID #3, ¶¶ 12–14.

On February 15, 2023, Defendant resigned. *Id.* at ¶ 15. When Defendant refused to fulfill her obligations under the Agreement, Medliant filed this civil action. *See generally* Doc. 1. Defendant moved to dismiss for forum non conveniens. *See generally* Doc. 8. Alternatively, Defendant moved to dismiss for failure to state a claim. For the reasons set forth below, Defendant's motion should be denied.

## ARGUMENT & AUTHORITIES

I.    Defendant's Motion to Dismiss for Forum Non Conveniens Should be Denied.

A.   Legal standard.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *BarZ Adventures Inc. v. Patrick*, No. 4:20-cv-299-ALM, 2020 WL 6342951, at *1 (E.D. Tex. Oct. 29, 2020) (emphasis in original) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013)). In determining whether to enforce a forum-selection clause, the Court must make a threshold determination whether the forum-selection clause is mandatory or permissive. *Id*. "There is a 'sharp distinction' between mandatory and permissive forum-selection clauses—only a mandatory forum-selection clause justifies transfer or forum non conveniens dismissal." *Davis v. Meta Platforms, Inc.*, No. 4:22-CV-01001, 2023 WL 4670491, at *10 (E.D. Tex. July 20, 2023).

If the clause is mandatory, the Court conducts a venue-transfer analysis identical to that under 28 U.S.C. § 1404(a), except the Court weighs only the public interest factors to determine whether to dismiss or transfer. *See Provitas, LLC v. Quality Ingredients Corp.*, No. 4:21-cv-00196, 2021 WL 5907790, at *8 (E.D. Tex. Dec. 14, 2021) (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). "The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id*. "These factors are not exhaustive or exclusive, and no single factor is dispositive." *Id*.

### B.   The forum-selection clause is permissive.

This Court must first determine whether the forum-selection clause is mandatory or permissive. *See BarZ*, 2020 WL 6342951, at *1. While federal law governs the enforceability of a forum selection clause, the question of enforceability is distinct from the issue of interpretation, which requires the Court to determine the applicable state law. *Putnam v. Perficient, Inc.*, No. 4:21-CV-00739-SDJ-CAN, 2022 WL 4480329, at *3 (E.D. Tex. July 20, 2022), *report and recommendation adopted*, No. 4:21-CV-739-SDJ, 2022 WL 4474901 (E.D. Tex. Sept. 26, 2022).

The Agreement is governed by the laws of Nevada. Doc. 8–1, PageID #53, § 16. Because Texas choice of law rules give effect to choice of law clauses, Nevada substantive law applies in determining whether the forum selection clause is mandatory or permissive. *See Putnam*, 2022 WL 4480329, at *3 (applying Missouri law to forum-selection clause). *See also Provitas*, 2021 WL 5907790, at *13 (applying Minnesota law to forum-selection clause).

Under Nevada law, a forum-selection clause is mandatory where the clause contains "words of exclusivity." *See Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 108 (Nev. 2015). When a forum selection clause "provide[s] no words of exclusivity," the Court should not "read

- 3 -

[exclusivity] into the contract that is not there." *Id*. "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *Wiggins v. Seeley*, No. 3:16-cv-00642-HDM-WGC, 2017 WL 969186, at *3 (D. Nev. Mar. 13, 2017) (quoting *N. Cal. Dist. Council of Laborers v. Pittsburgh–Des Moines, Inc.*, 69 F.3d 1034, 1037 (9th Cir. 1995)). "On the other hand, a forum selection clause providing a particular court or state has jurisdiction, but says nothing about it being exclusive jurisdiction, is permissive and generally will not be enforced." *Id.*; *see also Coppola v. Baron*, No. 2:07-cv-00664-BES-RJJ, 2007 WL 4180590, at *2 (D. Nev. Nov. 20, 2007).

Turning to the forum selection clause at issue, the Agreement states:

> **GOVERNING LAW/VENUE.** This Agreement shall be governed by the laws of Nevada. Medliant is incorporated in Nevada and as such, chooses to utilize Nevada law for interpretation and analysis of the herein agreement as well as chooses to utilize the venue of the 8th Judicial District Court in Las Vegas, Nevada as and for any disputes that may arise from time to time. By signing below, you agree to Medliant's choice of venue and choice of law.

Doc. 8–1, PageID #53, § 16 (emphasis in original). This forum-selection clause provided Medliant a *choice* whether to file in Nevada or to file in another jurisdiction. *See id*. ("Medliant . . . chooses to utilize the venue . . .."). The forum-selection clause does not say that Nevada is an "exclusive" jurisdiction. *See Hunt Wesson Foods Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77–78 (9th Cir. 1987).[2]

Relying on *Fed. Nat'l Mortg. Assoc. v. 8 Judicial Dist. Ct. in and for Cnty. Of Clark*, 528 P.3d 586 (Table), 2022 WL 19697697, at *3 (Nev. Dec. 22, 2022), Defendant asserts the forum-selection clause is mandatory. *See* Doc. 8, PageID #32. But the forum-selection clause in

---

[2] Defendant alleges the forum-selection clause "requires that both parties 'agree to Medliant's choice of venue and choice of law." Doc. 8, PageID #32. This is misleading. The clause specifically states that "[b]y signing below, *you [i.e., Defendant]* agree to *Medliant's* choice of venue and choice of law." *See* Doc. 8–1, PageID #53, § 16 (emphasis added).

- 4 -

in that case stated the D.C. courts "shall . . . have jurisdiction over jurisdiction over all controversies." *Id.* at *2. Consequently, the Nevada Supreme Court held that the "phrase 'shall be litigated,' while not conclusive, strongly suggest[ed] that the forum selection clause is mandatory." *Id.* Such is not the case here. Medliant had a choice to litigate in Nevada, not a mandate, and Defendant is bound by Medliant's choice.[3]

Defendant also argues *Coppola v. Baron*, No. 2:07-cv-00664-BES-RJJ, 2007 WL 4180590, at *2 (D. Nev. Nov. 20, 2007) is inapplicable to the present case because "no one in that case contested that *some* Nevada court (either state or federal) was required." *See* Doc. 8, PageID #32 (emphasis in original). Defendant, however, misapplies *Coppola*. In that case, the Court stated that for the forum-selection clause to be a mandatory one, it "must contain language that clearly designates a forum as the exclusive one." *Coppola*, 2007 WL 4180590, at *2. "A forum selection clause needs to contain mandatory language requiring a case be litigated in only *one* forum." *Id.* (emphasis added). The language in the forum-selection clause in *Coppola* stated "nothing about the Clark County state courts having exclusive jurisdiction . . . [t]he effect of the language is merely that the parties consent to the jurisdiction of the Clark County courts." *Id.* Because the forum-selection clause at issue in *Coppola* did not specify that the Nevada state court was the "exclusive" jurisdiction for litigation, it was "permissive rather than mandatory." *See id.*

Defendant also relies on two cases for the proposition that the forum-selection clause at issue here is mandatory. *See* Doc. 8, PageID #33 (citing *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) and *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817

---

[3] Hoping to avoid motion practice in Nevada—expecting Defendant to challenge the forum-selection clause's enforceability there—Medliant elected to file suit a few miles from Defendant's home and where the cause of action arose. Medliant has not uncovered a reason why Defendant apparently finds it more convenient to litigate in Nevada state court.

F.2d 75, 76–78 (9th Cir.1987)). In *Excell*, the Tenth Circuit (applying Colorado and federal law) concluded the forum-selection was mandatory where it provided that "jurisdiction *shall* be in the State of Colorado, and venue *shall* lie in the County of El Paso, Colorado" *See Excell*, 106 F.3d at 321 (emphasis added). Because the forum-selection clause in that case contained mandatory language, *Excell* is inapplicable. In *Hunt*, the Ninth Circuit reversed the district court and held the forum-selection clause at issue there was permissive, not mandatory. *Hunt*, 817 F.2d at 76–78 ("The [forum-selection clause's] language says nothing about the Orange County courts having exclusive jurisdiction."). *Hunt*, therefore, supports Medliant's position, not Defendant's.

Here, this Court cannot and should not "read in" an exclusivity provision where one does not exist. *See Am. First Fed.*, 359 P.3d at 108. Because the forum-selection clause in the Agreement is permissive, rather than mandatory, Medliant was free to "choose" where to file against Defendant. *See* Doc. 8–1, PageID #53, § 16. As a result, Defendant's motion to dismiss for forum non conveniens should be denied.[4]

C. If, however, the Court concludes the forum-selection clause is mandatory, the motion should still be denied.

If, however, the Court concludes the forum-selection clause is mandatory, the Court must weigh the public interest factors to determine whether to grant the motion to dismiss. *See Provitas*, 2021 WL 5907790, at *16. These factors include: "(1) the administrative difficulties flowing from court congestion; (2) the interest in having localized issues decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or applying the foreign law." *Id.*

---

[4] Defendant did not assert alternative grounds for dismissal in her motion if the Court found the clause permissive.

Turning to the first factor, the administrative difficulties flowing from court congestion, "considers 'not whether transfer will reduce a court's congestion, but whether a trial may be speedier in another court because of its less crowded docket.'" *Moates v. Facebook, Inc.*, No. 4:20-cv-896-ALM-KPJ, 2021 WL 3013371, at *9 (E.D. Tex. May 14, 2021) (quoting *Hillestad v. LLOG Expl. Co., LLC*, No. 3:17-cv-341, 2018 WL 4938708, at *7 (S.D. Tex. Sept. 20, 2018)). Defendant's motion conclusory alleges this factor is "neutral because of the difficulties in comparing any court congestion between [the Eighth Judicial District Court] in Nevada and [this District]." *See* Doc. 8, PageID #34. Quite the contrary, the judicial statistics can be easily located and compared with a few clicks on a computer. *Compare* Appendix, Tab 48, U.S. District Court – Judicial Caseload Profiles for the Eastern District of Texas, p. 332 *with* Appendix, Tab 49, Annual Report of the Nevada Judiciary Fiscal Year 2022 Appendix Tables, p. 354–434.[5]

For a twelve-month period ending March 31, 2023, judges in this District had approximately 399 civil actions per judgeship with a median time of 8.7 months for disposing a civil case. *See* Appendix, Tab 48, U.S. District Court – Judicial Caseload Profiles for the Eastern District of Texas, p. 332.[6] For the Eighth Judicial District of Nevada, there are 58 judges in that district, 89,368 civil cases, and approximately 1,540 cases per judgeship. *See* Appendix, Tab 49, Annual Report of the Nevada Judiciary Fiscal Year 2022 Appendix Tables, at p. 345.[7] Because this District has significantly fewer cases per judgeship and a quick disposition period, this factor

---

[5] As referenced above, the Court "is permitted to look at evidence in the record beyond those facts alleged in the complaint[] and its proper attachments" in connection with a motion challenging venue. *See Huawei Techs. Co.*, 2018 WL 1964180, at *2. Pursuant to Rule 201 of the Federal Rules of Evidence, Medliant requests this Court take judicial notice of the judicial statistics referenced in Appendix, Tabs 50–51.

[6] The full report can be found here: https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/03/31-1

[7] The 20222 Annual Report and its Appendix can be found here: https://nvcourts.gov/supreme/reports/annual_reports/2022_annual_report

- 7 -

weighs against dismissal. *See Moates*, 2021 WL 3013371, at *9 ("Because the Eastern District of Texas has fewer cases per judgeship and disposes of cases faster than the Northern District of California, this factor weighs against transfer.").

The second factor, "local interest in having localized interests decided at home," weighs heavily against dismissal. *See In re Volkswagen*, 545 F.3d at 315. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). This factor "generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, No. 3:07-cv-2042-D, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008). As stated above, Defendant resided in this District and worked for Medliant in this District. Doc. 1, PageID #2, ¶¶ 9–10. Defendant breached the Agreement in this District by failing to pay Medliant damages. *Id*., PageID #3, ¶¶ 12–18. Defendant has not identified any witnesses in Nevada who may be in possession of relevant information. Accordingly, this factor weighs heavily against dismissal.

The third factor concerns the familiarity of the forum with the law that will govern the case. The familiarity of the forum state with governing law should only be considered a public-interest factor weighing in favor of transfer if the governing law is "exceptionally arcane." *AudioEye, Inc. v. accessiBe Ltd.*, No. 6:20-CV-997-ADA, 2022 WL 827805, at *9 (W.D. Tex. Mar. 9, 2022). Here, Medliant's claims will be decided under Nevada law. However, because this Court is equally capable of applying Nevada law, this factor is neutral. *See Venable's Constr. Inc. v. Oneok Arbuckle II Pipeline, LLC*, No. 2:20-CV-018-Z-BR, 2020 WL 2841398, at *8 (N.D. Tex. June 1, 2020). Similarly, the fourth factor, the avoidance of unnecessary problems of conflict of laws of the application of foreign law, is neutral because there is no conflict of law

issues or problems that may arise from the application of foreign law. *See Moates*, 2021 WL 3013371, at *10.

In sum, two factors weigh against transfer—the second one heavily so—and two factors are neutral. Accordingly, even assuming the forum selection clause is mandatory, this Court should deny Defendant's motion.

II.   Defendant's Motion to Dismiss for Failure to State a Claim Should be Denied.

   A.   Legal standard.

"A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is 'appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.'" *Stuntz v. Lion Elastomers, L.L.C.*, No. 1:17-CV-33, 2017 WL 11613239, at *2–3 (E.D. Tex. Sept. 12, 2017) (Crone, J.) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002)). "It is not a procedure for resolving contests about the facts or the merits of a case." *Stuntz*, 2017 WL 11613239, at *2–3 (citing 5B Charles A. Wright et al., *Federal Practice and Procedure* § 1356 (3d ed. 2004 & Supp. 2015)). "In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff." *Id*. "A motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted." *Id*. (internal citations omitted).[8]

---

[8] The cases relied upon by Defendant discussing the *proof* necessary for a breach of contract claim are inapplicable at the motion to dismiss stage. *See* Doc. 8, PageID #35–36 (citing *Iliescu v. Regional Trans. Comm'n of Washoe Cty.*, 522 P.3d 453, 458 (Nev. Ct. App. 2022) (summary judgment); *Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co.*, 105 Nev. 855, 857 (1989) (review of findings of fact and conclusions of law); *Sherman v. Smead*, 527 P.3d 973, 2023 WL 2960921, at *3 (Nev. App. 2023) (summary judgment)).

> B. Federal law does not prohibit Medliant from recovering immigration costs and expenses as breach of contract damages.

Federal regulations prohibit an employer from seeking or receiving "*payment* of any kind for any activity related to obtaining permanent labor certification, including payment of the employer's attorneys' fees . . . ." 20 C.F.R. § 656.12(b). "Payment" is defined to include "monetary payments; wage concessions, including deductions from wages, salary, or benefits; kickbacks, bribes, or tributes; in kind payments; and free labor." *Id.*

Here, it is undisputed that Medliant has never sought or received payment for immigration costs or expenses through wage concessions, deduction, in kind payments, or free labor. The Agreement does not require Defendant to make payments to Medliant for any immigration costs or expenses. Instead, Medliant seeks, *through litigation*, the recovery of monies it spent in exchange for Defendant's promise to work for a set period of time. This practice is entirely consistent with contract law throughout the country. *See* 22 Am. Jur. 2d *Damages* § 24 (May 2023 Update).

To be sure, it is improper under federal regulation for an employer to withhold, from an employee's wages, monies the employer spent towards immigration costs, "if such a deduction reduces the wage below the required level . . . ." *Kutty v. U.S. Dept. of Labor*, 764 F.3d 540, 547–48 (6th Cir. 2014). Defendant correctly identifies *Kutty*, as an example of this prohibition. Doc. 8, PageID #36.[9] There, an employer withheld expenses for obtaining the employees' labor

---

[9] The other case Defendant cites, *Vorrey v. City of Brownsville*, No. 17-cv-222, 2018 WL 7291458, at *9 (S.D. Tex. Oct. 5, 2018), is inapposite. There, an employee filed a complaint arguing that his employer was required to reimburse him for immigration costs he already paid, a claim the court acknowledged it lacked jurisdiction over because there is no private right of action under the relevant federal regulations. *Id.* at *9–10. The facts here are the inverse: Medliant is seeking, as damages for its breach of contract claim, recovery of immigrations costs that it paid in exchange for Defendant's services.

certifications from employees' *salaries*. *Kutty*, 764 F.3d at 546.[10] But no regulation prohibits an employer from recovering, as a part of damages for breach of contract, consideration that employer paid in exchange for an employee's performance.

Simply put, Medliant is entitled to seek damages related to immigration costs as a part of its breach of contract claim. No federal law or regulation prohibits or otherwise restricts an employer from recovering the benefit it conferred to an employee if an employee breaches an otherwise enforceable contract. *See Carmen v. Health Carousel, LLC*, No. 1:20-cv-313, 2023 WL 5104066, at *14 (S.D. Ohio Aug. 9, 2023) ("Accordingly, where the employer demands liquidated damages for an employee's breach of contract, courts assess how damages are calculated to determine whether they constitute permissible or illicit recoveries."). For this reason, federal law and regulations do not prohibit Medliant from seeking the costs it expended through a breach of contract action, and the Court should deny the motion.

> C. <u>Defendant's unconscionability affirmative defense is procedurally premature and substantively without merit.</u>

Unconscionability is an affirmative defense, *Codilla v. CTX Mortg. Co., LLC*, No. 2:10-CV-01469-RLH-PAL, 2011 WL 673753, at *5 (D. Nev. Feb. 17, 2011), which requires the Court to make certain factual determinations and involves "mixed questions of law and fact." *See FQ Men's Club, Inc. v. Doe Dancers I*, 136 Nev. 806, No. 79265, 2020 WL 5587435, at *2 (Nev. Sept. 17, 2020). Indeed, Defendant acknowledges factual findings are necessary to evaluate the defense of unconscionability. *See* Doc. 8, PageID #37 (citing *Henderson v. Watson*, 131 Nev. 1290, 2015 WL 2092073, at *2 (2015) (factfinder must review "the circumstances surrounding the formation and negotiation of the contract" in consideration of whether there was

---

[10] Employers can recoup, as liquidated damages, immigration expenses, so long as they do not also seek impermissible expenses like "back office administrative support fees." *See Carmen v. Health Carousel, LLC*, No. 1:20-cv-313, 2023 WL 5104066, at *14 (S.D. Ohio Aug. 9, 2023).

"an equality of bargaining power which results in no real negotiation and an absence of a meaningful choice.").

Resolution of questions of fact are not appropriate for motions to dismiss. *See TMX, Inc. v. Volk*, 131 Nev. 1355, 2015 WL 5176619, at *1 (Nev. Ct. App. Aug. 31, 2015) ("[J]udging the validity of an affirmative defense often requires consideration of facts outside of the complaint," and "generally does not provide grounds for a court to grant a motion to dismiss.") (citation and internal quotations omitted). Accordingly, Defendant's unconscionability defense is premature at the Rule 12 stage, and this Court must deny the motion.

While that should end the inquiry, Defendant's unconscionability defense also fails on the merits, which requires "both procedural and substantive unconscionability . . . before a court will render a contractual provision unenforceable by reason of unconscionability." *See* Doc. 8, PageID #37 (citing *Halcyon Silver, LLC v. Evelynmoe*, 526 P.3d 1110, 2023 WL 2661524, at *8 (Nev. Ct. App. Mar. 24, 2023)).

As to procedural unconscionability, the two cases upon which Defendant relies are inapplicable to the case here. In *Burch v. 2d Jud. Dist. Ct.*, 49 P.3d 647, 650–51 (Nev. 2002), the plaintiffs did not receive a copy of the warranty at issue until almost four months after the plaintiffs closed on their home, did not have an opportunity to read the one-page application form, or the thirty-one-page warranty, or to view the warranty video before signing the application. *See id*. They were not sophisticated customers, did not understand the warranty's terms, and the warranty's disclaimers were not conspicuous. *Id*. As a result, the Nevada Supreme Court held the warranty was "procedurally unconscionable." *See id*.

Similarly, in *Halcyon Silver, LLC v. Evelynmoe*, 526 P.3d 1110, 2023 WL 2661524, at *8 (Nev. Ct. App. Mar. 24, 2023)—after a three-day bench trial—the trial court held the contract at

- 12 -

issue was procedurally unconscionable because it was a pre-printed, standardized form, that required a party to "take it or leave it." *Halcyon Silver*, 2023 WL 2661524, at *8. None of the facts present in *Burch* or *Halcyon Silver* are present here.

Defendant's legal analysis as to procedural unconscionability amounts one sentence of its motion. *See* Doc. 8, PageID #38 ("The contract is a standardized form agreement on Medliant's letterhead, which evidences a lack of negotiation and choice on behalf of [Defendant]."). This is not enough to warrant dismissal on a motion to dismiss, especially where the evidence *currently* before the Court demonstrates otherwise.[11] For example, Section 19 of the Agreement states that "Employee represents that he/she has read the terms of this Agreement, has had an opportunity to ask questions and to review this Agreement with legal counsel of his/her choice, is not relying on any advice from Employer in this regard, and is voluntarily signing this Agreement." Doc. 8–1, PageID #53, § 19. Defendant had the opportunity to review the Agreement and the opportunity to question and review the Agreement with legal counsel, and she does not allege otherwise in her motion. Because there is no evidence of procedural unconscionability, the motion should be denied.

As to substantive unconscionability, Defendant again relies on *Halcyon Silver*. *See* Doc. 8, PageID #38. And, again, this case is inapplicable. In *Halcyon Silver*, the attorneys' fee provision required a customer to "pay all legal fees associated with any and all disputes." 2023 WL 2661524, at *1. Here, however, Medliant is only entitled to attorneys' fees if it "pursue[s] an action or proceeding to enforce the obligations set forth in this Agreement," which necessarily

---

[11] Medliant's Rule 26(a)(1) initial disclosures will include documents confirming Defendant agreed to the terms of her Medliant employment on two separate occasions over three years apart, once in September 2018 to begin the immigration process and again in January 2022. The September 2018 and January 2022 employment documents and associated contracts are virtually identical.

means Defendant's obligations will be enforced and Medliant will prevail on the merits. *See* Doc. 8–1, PageID #50, § 2(d) and #53, § 18. And, Nevada law even allows for her to recover attorneys' fees if the Court finds Medliant brought its claims "without reasonable ground or to harass" her should she prevail. *See* Nev. Rev. Stat. Ann. § 18.010 (West).

More significantly, however, "Nevada permits one-sided attorney fees clauses." *Dobron v. Bunch*, 215 P.3d 35, 40 (Nev. 2009) (Pickering and Cherry, J., concurring) (citing *Trustees, Carpenters v. Better Building Co.*, 710 P.2d 1379, 1382 (Nev. 1985)). Accordingly, and to the extent this Court wades into the merits of Defendant's affirmative defense of unconscionability, the Agreement is neither procedurally or substantively unconscionable, and the Court should deny the motion.

> ### D. Defendant's liquidated damages argument is also procedurally premature and substantively without merit.

"Liquidated damages provisions are presumed valid in Nevada." *Prothera, Inc. v. Zhou Ye*, No. 3:18-cv-00401-MMD-CLB, 2020 WL 3073345, at *4 (D. Nev. June 10, 2020) (citing *Khan v. Bakhsh*, 306 P.3d 411, 414 (Nev. 2013)).[12] Their purpose is to "serve as a good-faith effort to fix the amount of damages when contractual damages are uncertain or immeasurable." *Id*. (quoting *Khan*, 306 P.3d at 414). "In order to *prove* a liquidated damage clause constitutes a penalty, the challenging party must *persuade* the court that the liquidated damages are disproportionate to the actual damages sustained by the injured party." *Id*. (emphasis added) (quoting *Haromy v. Sawyer*, 654 P.2d 1022, 1023 (Nev. 1982)).

---

[12] Federal regulations also recognize that employers can "receive bona fide liquidated damages from the H-1B[, E-3, and H-1B1] nonimmigrant who ceases employment with the employer prior to an agreed date." 20 C.F.R. § 655.731(c)(10)(i)(B). While those regulations cover different visas (H-1B, E-3, and H-1B1) than Defendant's EB-3 visa, the regulations acknowledge recovery of liquated damages in similar circumstances.

While contractual interpretation is a question of law "when the facts are not in dispute," *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003), Defendant's argument regarding the Agreement's liquidated damage clause is inappropriate at the motion to dismiss phase because it requires the Defendant to prove a liquidated damage clause constitutes a penalty by persuading the Court that the liquidated damages are disproportionate to the actual damages sustained by the injured party. *See Prothera*, 2020 WL 3073345, at *4 (denying summary judgment for plaintiff on breach of contract claim because liquidated damages clause was unenforceable). Because the Court must necessarily make factual findings regarding Medliant's actual damages, Defendant's motion should be denied on this basis alone.

However, even if the Court considered Defendant's premature argument on the merits, it should reach the same result. The "distinction between a penalty and liquidated damages is that a penalty is for the purpose of securing performance, while liquidated damages is the sum to be paid in the event of non-performance." *Mason v. Fakhimi*, 865 P.2d 333, 335 (Nev. 1993) (quoting 22 Am. Jur. 2d *Damages* § 684 (1980)). Liquidated damages will not be considered a penalty when they are a "reasonable forecast" of damages that "are very difficult to estimate with any certainty." *Id*.

Here, the liquidated damages provision makes clear that Medliant's actual damages for Defendant's failure to complete the term of the Agreement are difficult to determine. Doc. 8–1, PageID #50, § 2(d). Medliant has expended significant resources in "promoting, training, testing, and licensing" Defendant for her to become a "U.S. Employee." *Id*. Accordingly, Medliant has a legitimate expectation that it will recover its investment in Defendant as she completes the term of her employment. This is because Medliant only makes a profit "when [Defendant] performs work for Clients." *Id*. Accordingly, to determine Medliant's actual damages based on

- 15 -

Defendant's non-performance and breach of the Agreement, Medliant would have to calculate and forecast the amount of money it would have profited from her services had she completed the term of her employment. Discovery will ultimately reveal that Defendant cannot "demonstrat[e] that the liquidated damages are disproportionate to [Medliant's] actual damages." *See Mason*, 865 P.2d at 335–36. But, at this stage of the proceeding, Defendant cannot and has "not rebut[ted] the presumption that the liquidated damages clause was valid," and the Court should deny her motion.[13] *See id*.

E.   The Agreement is not void against public policy.

Like her other arguments, Defendant's argument that the Agreement is void against Nevada's public policy is an affirmative defense, and is premature at the Rule 12 stage. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 999 (9th Cir. 2023) (applying California law, but noting that a "void as against public policy" argument is an affirmative defense); *TMX, Inc.*, 131 Nev. 1355, 2015 WL 5176619, at *1. However, even on the merits, this argument fails.

For a contract to be void against public policy, it must "create a situation which tends to operate to the detriment of the public interest." *Western Cab Co. v. Kellar*, 90 Nev. 240, 245 (1974). "A contract operates to the detriment of the public interest when the interest in the contract's enforcement is clearly outweighed by a public policy against enforcement." *Phillips v. Valley View Surgical, LLC*, 498 P.3d 1290, 2021 WL 5370984, at *4 (Nev. Ct. App. Nov. 17, 2021).

---

[13] Even if the Court found that the liquidated damages provision was unenforceable, Medliant can still recover actual damages. *See Paguirigan v. Prompt Nursing Employ. Agency*, No. 17-CV-1302 (NG), 2019 WL 4647648, at *12 (E.D.N.Y. Sept. 24, 2019) (limiting an employer's potential recovery to "actual damages proven" after finding a liquidated damages provision was unenforceable).

Ignoring the fact that Medliant brings much-needed professionals, like Defendant, to the United States to address staffing needs throughout the nursing profession,[14] Defendant argues that the Agreement violates the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1595, and is therefore void against Nevada's public policy. Doc. 8, PageID #40. Defendant is incorrect.

To state a claim for a violation of the TVPA, a plaintiff must plead that an abuse of law was: (1) undertaken "to exert pressure" on the plaintiff; (2) done "knowingly" by the defendant; and (3) that caused the plaintiff to provide labor or services he or she would otherwise have not willingly provided. *See Garcia-Lopez v. Waste Mgmt. of Tex., Inc.*, No. 22-20112, 2022 WL 17547458, at *2 (5th Cir. Dec. 9, 2022) (citing 18 U.S.C. §§ 1589(a)(3), 1595(a), 1589(c)(1)). To be an "abuse of threatened abuse of law or legal process," "the use or threatened use of a law or legal process" must be in a "manner or for any purpose for which the law was not designed, in order to exert pressure to another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1).

The Agreement does no such thing. As explained above, the Agreement's provisions are entirely proper under Nevada law, and do not inflict "serious harm" in violation of the TVPA. The cases Defendant cites in her motion underscore this point.[15] In *Paguirigan v. Prompt Nursing Employ. Agency, LLC*, No. 17-CV-1302 (NG), 2019 WL 4647648, at *2 (E.D.N.Y. Sept. 24, 2019), the Eastern District of New York found that an employer violated the TVPA because its contract contained a penalty provision of $25,000 and the employer filed numerous

---

[14] *See* American Hospital Association, *Study projects nursing shortage crisis will continue without concerted action*, https://www.aha.org/news/headline/2023-04-13-study-projects-nursing-shortage-crisis-will-continue-without-concerted-action.

[15] The cited authority, *Paguirigan v. Prompt Nursing Employ. Agency, LLC*, No. 17-CV-1302 (NG), 2019 WL 4647648 (E.D.N.Y. Sept. 24, 2019), and *Magtoles v. United Staffing Registry, Inc.*, No. 21-CV-1850 (KAM) (PK), 2023 WL 271078 (E.D.N.Y. Mar. 30, 2023), are both cases decided on summary judgment.

claims against former nurses alleging over $250,000 despite another court finding the penalty provision unenforceable. *Id.* at \*16; *see also Magtoles v. United Staffing Registry, Inc.*, No. 21-CV-1850 (KAM) (PK), 2023 WL 2710178, at \*24–25 (E.D.N.Y. Mar. 30, 2023) (penalty provision constituted "serious harm").[16]

Here, as noted above, there is no merit to Defendant's argument that the Agreement's liquidated damages provision is a penalty. And to the extent Defendant's argument on the TVPA turns on whether the Agreement's liquidated damages provision is a penalty, that argument is also premature because the Court must make factual findings before determining the liquidated damages provision is a penalty under Nevada law. *See supra* § II.B. The Agreement merely contains a liquidated damages permissible under Nevada law. *See Paguirigan*, 2019 WL 4647648, at \*17 ("[O]f course, there is no prohibition against defendants placing a valid liquidated damages provision in their contract."); *Estavilla v. Goodman Group, LLC*, No. CV 21-68-M-KLD, 2022 WL 539192, at \*15 (D. Mont. Feb. 23, 2022) (noting that a contract provision for repayment of money advanced, in part, for immigration costs, was enforceable).

Nor is there any real argument that Medliant has threatened to abuse legal process. Defendant cites section 2(e) of the Agreement for the claim that Medliant "uses the threat of legal action . . . as means to prevent [Defendant] and other employees from leaving Medliant." Doc. 8, PageID #42. However, section 2(e) of the Agreement merely states "[w]here an Employee leaves voluntarily prior to the contract term expiring, Medliant may use Employee's breach of this Agreement to file suit for breach of contract, amongst other claims, which

---

[16] The employment contract in *Paguirigan* also required an employee to submit a confession of judgment that the employer could file if an employee terminated his or her contract early and specifically stated that the liquidated damages provision was "to secure Employee's performance of the Employment term." *Paguirigan*, 2019 WL 4647648, at \*7–8. The Agreement here contains no similar provisions.

Medliant has done previously upon prior Employees breaching the herein Agreement." Doc. 8–1, PageID #50, § 2(e). This, however, is "conflat[ion of] the 'use' of legal process with the 'abuse' of legal process." *See Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619-TWP-TAB, 2015 WL 1396599, at *5 (S.D. Ind. Mar. 25, 2015). Under Nevada law, "filing a complaint does not constitute abuse of process." *See Land Baron Inv. v. Bonnie Springs Family LP*, 356 P.3d 511, 520 (Nev. 2015). And "filing lawsuits against employees who breached their employment contracts is exactly the end that the legal process at issue was designed to accomplish." *Panwar*, 2015 WL 1396599, at *5. Accordingly, Defendant's argument that the Agreement is against Nevada's public policy is premature, substantively without merit, and Defendant's motion on this basis should be denied.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court should deny Defendant's motion to dismiss for forum non conveniens. This Court should also deny Defendant's alternative motion for dismissal for failure to state a claim.

Respectfully submitted,

/s/ R. Brandon Bundren
R. Brandon Bundren
Texas Bar No. 24050353
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
P: 615.252.4647
F: 615.248.3047
bbundren@bradley.com

*Attorney for Medliant Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on September 25, 2023, I electronically filed a true and correct copy of the foregoing with the Clerk of Court for the U.S. District Court, Eastern District of Texas, through the Court's Electronic Case Filing system, which will serve all counsel of record listed below:

Rachel Williams Dempsey (pro hac vice)
Email: rachel@towardsjustice.org
Juno Turner (pro hac vice)
Email: juno@towardsjustice.org
David H. Seligman (pro hac vice)
Email: david@towardsjustice.org
TOWARDS JUSTICE

*Attorneys for Defendant*

/s/ R. Brandon Bundren
R. Brandon Bundren