UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| MEDLIANT INC., <br><br> *Plaintiff*, <br><br> v. <br><br> KATRINE PONCE DE LEON, <br><br> *Defendant*. | Civ. Action No.: <br> 1:23-cv-00203-MAC |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I.  INTRODUCTION

Defendant's Motion to Dismiss is based on the straightforward language of the forum selection clause that Medliant drafted, which provides that Medliant "chooses to utilize the venue of the 8th Judicial District Court in Las Vegas, Nevada as and for any disputes that may arise" between the parties. (Contract § 16, ECF No. 8-1.) Medliant says that this is not a mandatory venue selection provision, but rather a permissive one, authorizing courts in Las Vegas, Nevada to exercise jurisdiction over disputes between the parties but not requiring disputes to be resolved in that venue. In this case, as in all others, the plain language of the contract governs, and adopting Medliant's interpretation would require the court to ignore the plain language of the contract. Moreover, even if the venue selection provision were permissive and not mandatory, it would still require dismissal.

Finally, even if the forum selection clause did not compel dismissal, Ms. Ponce de Leon has identified two independent bases on which dismissal is warranted. Medliant has failed to state a claim for contract damages, and the contract is void as against public policy.

II. ARGUMENT

A.  **The Forum-Selection Clause is Mandatory and Directs Litigation to a Single Court.**

By its plain terms, the forum selection clause in Medliant's contract leaves no choice as to venue, stating that Medliant "*chooses* to utilize the venue" of the 8th Judicial District Court in Las Vegas, Nevada for "*any* disputes" that arise. (Contract § 16, ECF No. 8-1.) (emphasis added). This language "goes further than signaling merely that [the specified] courts are an appropriate forum," stating not that Medliant *may* choose the venue of the 8th Judicial District Court for contract disputes, but that it *does* choose such venue. *See Fed. Nat'l Mortgage Ass'n v. Eighth Judicial Dist. Ct.*, 528 P.3d 586, 2022 WL 19697697, at *2 (Nev. Dec. 22, 2022). This language is not

1

ambiguous—and even if it were, it would have to be construed against Medliant as the drafter. *See Am. First Fed. Credit Union v. Soro,* 359 P.3d 105, 106 (2015).

As an illustration that the plain language of the contract requires dismissal, it contains both a choice-of-law provision and a venue provision. These provisions include nearly-identical language: Medliant "chooses to utilize Nevada law for interpretation and analysis of the herein agreement" and "chooses to utilize the venue of the 8th Judicial District Court in Las Vegas, Nevada as and for any disputes that may arise from time to time." (Contract § 16, ECF No. 8-1.) And indeed, Medliant acknowledges that the choice-of-law provision compels the Court to apply Nevada law to its analysis. (Pl's. Br. at 5, ECF No. 10 ("The Agreement is governed by the laws of Nevada.") (citing Contract § 16, ECF No. 8-1.)) This is the correct outcome—Nevada law does apply—but it makes Medliant's position that the parallel language as to venue does not compel any particular result especially unpersuasive.

In an effort to avoid dismissal, Medliant argues that because the forum selection clause does not say that Nevada is the "exclusive" jurisdiction, it must be permissive, and therefore allows Medliant to file an action in any court in the country with an independent basis for jurisdiction over the parties. (Pl's. Br. at 4, ECF No. 10.) As an initial matter, the forum selection clause *does* contain words of exclusivity: As set forth above, the contract exclusively identifies the 8th Judicial District in Las Vegas, Nevada as the chosen venue for any contract actions. That the contract uses a derivative of the word "choice" does not change this conclusion.[1] When Medliant enters into a contract with an employee, it *chooses* the venue of the 8th Judicial District Court for all contract actions—a choice that is complete once the contract is entered into. Nothing in the contract

---

[1] By Medliant's logic, choice-of-law provisions would allow the contract drafter to choose any law to apply to a contract at any time because they include the word "choice."

2

indicates that Medliant can later change its mind and make a difference choice.

Moreover, the standard Medliant seeks to impose to distinguish between "mandatory" and "permissive" venue provisions is unsupported by the law. The rule in Nevada is that a forum selection clause that confers *jurisdiction* upon a particular venue does not make that venue *mandatory* unless "the clause contain[s] words of exclusivity." *Am. First Fed. Credit Union*, 359 P.3d at 108. There is a difference, in other words, between a contractual provision that allows courts to exercise jurisdiction where there might otherwise be none (thus expanding the possible appropriate venues for an action) and a contractual provision that limits the appropriate venues for an action to those that are identified in the forum-selection clause. That difference turns on whether the contract includes some language indicating that the venue is mandatory or exclusive. *See Am. First Fed. Credit Union*, 359 P.3d at 107-08 (citing cases); *Coppola v. Baron*, No. 2:07-CV-00664-BES-RJJ, 2007 WL 4180590, at *2 (D. Nev. Nov. 20, 2007) ("When only jurisdiction is specified, the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive."); *R&O Constr. Co. v. Fire Materials Grp. LLC*, No. 209CV00147KJDRJJ, 2010 WL 11579363, at *2 (D. Nev. Mar. 19, 2010) (holding that "consent [to jurisdiction] does not preclude the case from being litigated in another court").

Relatedly, Nevada courts have also held that where a forum-selection clause specifies a venue in a particular county, that provision does not necessarily require the case to be heard in county court where a federal court also sits in that county. *See Coppola*, 2007 WL 4180590, at *2 (holding that venue was proper in federal court where a contract provided that "venue shall be Clark County, Nevada"); *R&O Const. Co.*, 2010 WL 11579363, at *2 (holding that venue was proper in federal court where the venue provision provided that "[j]urisdiction and venue are hereby agreed to be in the District Court of Clark County, State of Nevada").

3

Medliant attempts to twist these rules past the point of coherence, arguing that if a forum selection clause is permissive as to any element of venue—even if it is only, on its face, permissive as to the choice between federal and state court—then it is permissive as to all elements of venue. But the cases it relies on do not support this proposition, which would turn the basic rules of contract interpretation on their head. *See Am. First Fed. Credit Union*, 359 P.3d at 106. In fact, the only case that Medliant cites to address similar facts to those here, *Wiggins v. Seeley, enforced* a venue selection clause providing that "[j]urisdiction is in Douglas County, Nevada" to deny a motion to transfer the case to federal court in California, noting that "[a] valid forum selection clause 'represents the parties agreement as to the most proper forum'" and should generally be enforced. No. 3:16-cv-00642-HDM-WGC, 2017 WL 969186, at *2 (D. Nev. Mar. 13, 2017) (quoting *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S.Ct. 568, 581 (2013)). It was only in the context of subsequently assessing whether the case should be transferred to state court that the court found that the venue clause was "permissive" and that the case could therefore remain in the federal District of Nevada. *Id*.

Because the plain terms of the contract require venue in the 8th Judicial District in Las Vegas, Nevada, and use words of exclusivity, the Court should dismiss this action.

### B.     The Public Interest Favors Enforcing the Forum-Selection Clause.

The public interest also weighs in favor of dismissal based on the venue selection provision, and this would be true even if the provision were merely permissive. When assessing court congestion, courts "consider[] 'the speed with which a case can come to trial and be resolved,' not just the statistics of the court's case load." *Blue Racer Midstream v. Kelchner, Inc.*, No. 3:16-CV-3296-K, 2018 WL 993781, at *3 (N.D. Tex. Feb. 21, 2018) (quoting *In re Genetech, Inc.*, 566 F.3d 1338, 1347 (5th Cir. 2009)). The Eighth Judicial District Court of Nevada had 97,834 total cases

filed (85,041 civil and 12,793 criminal) in 2022 but disposed of 102,387 cases.[2] Medliant argues that the Eastern District of Texas has a "quick disposition period" of a median of 8.7 months for disposing of a civil case, but does not identify how this compares to the Nevada court. (Pl's. Br. at 7, ECF No. 10.). Thus, there is no relevant information to assess this factor, and it is neutral.

Medliant's arguments regarding localized interest are also inapposite. Medliant is incorporated in Nevada and the contract has a Nevada choice-of-law provision. Thus, Nevada has a "strong local interest." *Moates v. Facebook, Inc.*, No. 4:20-cv-896-ALM-KPJ, 2021 WL 3013371, at *10 (E.D. Tex. May 14, 2021); *see also Heaven Media Ltd. v. Everts*, No. A-22-CV-00025-LY, 2022 WL 18585892, at *4 (W.D. Tex. May 10, 2022) (finding Texas had no local interest where the plaintiff is headquartered in the United Kingdom). Moreover, Ms. Ponce de Leon lives in Florida, meaning that none of the parties to this action reside in Texas.[3] Finally, this is a breach of contract claim for a contract that is used across the country. *See Moates*, 2021 WL 3013371, at *10 (finding the place of residence "is not necessarily determinative" and only provides only "some local interest."). Because Medliant cannot argue that Texas's local interest outweighs Nevada's, this factor thus weighs in favor of dismissal.

The third factor also weighs in favor of granting dismissal. "Nevada courts are *more* familiar with Nevada law than are [Texas] courts, and therefore more adept at applying Nevada contract law to this case." *Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, 903 F. Supp.

---

[2] SUPREME COURT OF NEVADA, ANNUAL REPORT OF THE NEVADA JUDICIARY FISCAL YEAR 2022 APPENDIX TABLES, at 10, available at
https://nvcourts.gov/__data/assets/pdf_file/0016/38014/2022_Annual_Report_Appendix.pdf.

[3] It is unclear why, having chosen the 8th Judicial District in Las Vegas as the venue for any claims arising out of its contract, Medliant now admits that it filed this action "[h]oping to avoid motion practice in Nevada," (Pl's. Br. at 5 n.3, ECF 10.) but Ms. Ponce de Leon notes that its purported concern for her is misplaced, as she now lives in Florida, from which she can book a direct flight to Las Vegas but not to Beaumont.

3d 1106, 1112 (D. Nev. 2012). The final factor is neutral because Medliant agrees that no conflict of law issues exist in this case. (Pls.' Br. at 8-9, ECF No. 10.) Thus, two of the four factors weigh in favor of granting dismissal and two factors are neutral, and Medliant fails to establish this is an "exceptional case" and this action must be dismissed.

### C. Medliant is Not Permitted to Recover Immigration Costs.

Medliant does not dispute that its complaint seeks reimbursement of "the costs of immigration," (Compl. ¶ 18, ECF No. 1), but it attempts to recharacterize these costs as seeking "*through litigation*, the recovery of monies it spent in exchange for Ms. Ponce de Leon's promise to work for a set period of time." (Pl's. Br. at 10, ECF No. 10.) It also argues that, because it did not request reimbursement of the costs of immigration as wage deductions while Ms. Ponce de Leon was still employed by Medliant, it can now collect this money. (*Id.*)

These attempted distinctions are not meaningful. The relevant federal regulation prohibits Medliant from receiving "payment of any kind for any activity related to obtaining permanent labor certification[.]" (Pl's. Br., at 10, ECF No. 10 (quoting 20 C.F.R. § 656.12(b).))[4] Medliant's position that payment recovered through litigation is not payment under this rule is unsupported and unfounded. Thus, Medliant cannot recover immigration costs. The caselaw Medliant cites supports this outcome; for example, in *Carmen v. Health Carousel, LLC*, No. 1:20-cv-313, 2023 WL 5104066 (S.D. Ohio. Aug. 9, 2023), the court observed that liquidated damages provisions are unenforceable when they seek "illicit recoveries." *Id.* at *14. That is what Medliant seeks here.

---

[4] While Medliant claims that *Vorrey v. City of Brownsville*, No. 17-cv-222, 2018 WL 7291458 (S.D. Tex. Oct. 5, 2018) is inapposite because the court acknowledged it did not have jurisdiction over resolution of the plaintiff's claims, its interpretation of federal regulations on the issue of whether an employer can recoup immigration related expense is still persuasive. The court agreed that an employer may not collect business expenses related to immigration petitions and costs. *Id*. at *9 (citing 20 C.F.R. § 655.731(b)(9)(ii)).

Federal regulation prohibits reimbursement of immigration costs, and these damages therefore cannot form the basis of Medliant's breach of contract claim.

>  D. **The Contract's One-sided Attorneys' Fees Clause is Unconscionable.**

Medliant's one-sided attorneys' fees provision is procedurally and substantively unconscionable, and this issue can be resolved on a motion to dismiss. While unconscionability "often requires consideration of facts outside of the complaint[,]" such consideration is not necessary here, where the presence of unconscionability is demonstrated by the terms and form of the contract. *TMX, Inc. v. Volk*, 131 Nev. 1355, 2015 WL 5176619, at *1 (Nev. Ct. App. Aug. 31, 2015). Thus, for example, in *Burch v. 2d Judicial Dist. Ct.*, 118 Nev. 438, 448 (2002), the court found an arbitration agreement procedurally and substantively unconscionable based solely on the facts alleged in the complaint and the text of the agreement.

Medliant's attempt to distinguish *Halcyon Silver, LLC v. Evelynmoe*, which like *Burch* found a one-sided legal fees provision both procedurally and substantively unconscionable without additional evidence, is meritless. (Pl.'s Br. at 12-13, ECF No. 10 (citing 526 P.3d 1110, 2023 WL 2661524 (Nev. Ct. App. Mar. 24, 2023).) Medliant first claims that the provision in *Halcyon Silver*, which provided one-sided attorneys' fees "associated with any and all disputes," is materially different from the one at issue here, which provides attorneys' fees if Medliant "pursue[s] an action or proceeding to enforce the obligations set forth in this Agreement." *Id.*, at *1; Contract, at ¶ 18, ECF No. 8-1. Medliant contends that it is only entitled to fees if it "prevail[s] on the merits." (Pl's. Br. at 14, ECF No. 10.) But this is not true, as evidenced by the plain language of the agreement.

Nor does Medliant's contention that Ms. Ponce de Leon had the "opportunity to question and review the Agreement with legal counsel" affect the analysis of whether the terms of the contract were negotiable. (Pl.'s Br. at 13, ECF No. 10.). Medliant has not refuted and cannot refute

7

that the contract is a pre-printed form agreement, and the text of the contract shows no opportunity for Ms. Ponce de Leon to negotiate. *See Halcyon Silver*, 2023 WL 2661524, at *8 ("Although appellants suggest that Evelynmoe could have negotiated a different contract, no language in the contract suggests that this was an option."). Thus, the attorneys' fees provision is procedurally unconscionable.

Medliant's argument regarding substantive unconscionability fares no better. Ms. Ponce de Leon agrees that one-sided attorneys' fees are not *per se* illegal, even though both of the cases Medliant relies upon refused to award attorneys' fees.[5] But here, as in *Halcyon Silver*, the attorneys' fee provision is substantively unconscionable because "it is entirely one-sided, as it does not require appellants to pay legal fees under any circumstances." 2023 WL 2661524, at *8.[6] (Contract, ¶¶ 2(d), 18, ECF No. 8-1.) As a result of its substantive and procedural unconscionability, therefore, the contract is unenforceable.

### E. The Liquidated Damages Provision is a Penalty and is Unlawful.

Whether a liquidated damages clause in a contract is an unlawful penalty is a "purely legal" question. *Prothera, Inc. v. Zhou Ye*, No. 3:18-cv-00410-MMD-CLB, 2020 WL 3073345, at *6 (D. Nev. June 10, 2020). A penalty "is for the purpose of securing performance, while liquidated damages is the sum to be paid in the event of non-performance." *Id*. at *4. Where a contract "seeks to impose massive liability for breaching the contract" that "evidence[es] its intent to secure

---

[5] *See Dobron v. Bunch*, 125 Nev. 460, 465 (2009) (refusing to award attorneys' fees because the relevant action was for claims not encompassed within the one-sided attorneys' fees provision); *Trustees of Carpenters for Southern Nevada Health & Welfare Trust v. Better Bldg. Co.*, 101 Nev. 742, 747 (1985) (declining to permit an award of attorneys' fees pursuant to the one-sided attorneys' fees provision).

[6] Plaintiff's argument regarding Nev. Rev. Stat. § 18.010 is inapplicable, because that statute does not apply to actions "arising out of a written instrument or agreement which entitles the prevailing party to an award of reasonable attorney's fees." (Pl's. Br. at 14, ECF No. 10.)

8

compliance." *Id*. at *5.

Here, the liquidated damages provision seeks $2,500 for each month remaining on Ms. Ponce de Leon's contract, and Medliant seeks $52,500 under it. (Demand Letter, ECF No. 8-1 at 12-13.) Such "massive liability" evidences Medliant's "intent to secure compliance." *Prothera, Inc.*, 2020 WL 3073345, at *6. This is highlighted by Medliant's own motion: While Medliant claims that it "has a legitimate expectation that it will recover its investment in Ms. Ponce de Leon as she completes the term of her employment[,]" it has itself identified that this investment is the $7,878 in immigration costs it seeks to improperly obtain.[7] (Pl's. Br. at 15, ECF No. 10.); *see also* Contract, ¶ 2(d), ECF No. 8-1 (liquidated damages are to compensate for "Employer's investment of time, effort, and money in promoting, training, testing, and licensing and otherwise assisting Employee to become a U.S. employee."). This is more than enough to meet Ms. Ponce de Leon's burden to "persuade the Court" that Medliant seeks to impose an unlawful penalty upon departing employees. *Prothera, Inc.*, 2020 WL 3073345, at *6.

    **F.**    **Medliant's Contract is Unenforceable Because it Uses Penalties and Threat of Litigation to Coerce Labor.**

The text of Medliant's contract, by itself, is sufficient to show that it is void as against Nevada public policy. As multiple courts have found, where a contract serves to impose tens of thousands of dollars in penalties on employees for leaving early, the contract constitutes a threat

---

[7] Medliant also incorrectly contends that it can obtain liquidated damages pursuant to 20 C.F.R. § 655.731(c)(10)(i)(B). (Pl's. Br. at 14 n.12, ECF No. 10.) This regulation applies only to H1-B visa holders, which Ms. Ponce de Leon is not. The existence of the regulation for holders of a different visa shows that the government could, but has chosen not to, protect liquidated damages provisions for other visa holders.

    Moreover, 20 C.F.R. § 655.731(c)(10)(i)(B) only permits an employer to receive liquidated damages under certain circumstances. These circumstances, including that the liquidated damages be "for a matter principally for the benefit of the employee," 20 C.F.R. § 655.731(c)(9)(iii)(B), are not present here.

of serious harm and violates the TVPA. *See Paguirigan v. Prompt Nursing Employment Agency, LLC*, No. 17-CV-1302 (NG), 2019 WL 4647648, at *2, 8 (E.D.N.Y. Sept. 24, 2019) ($25,000 in liquidated damages violated the TVPA); *Magtoles v. United Staffing Registry, Inc.*, No. 21-CV-1850 (KAM) (PK), 2023 WL 2710178, at *3 (E.D.N.Y. Mar. 30, 2023) ($60,000 in liquidated damages violated the TVPA); *Vidal v. Advanced Care Staffing*, No. 1:22-cv-05535-NRM-MMH, 2023 WL 2783251, at *15 (E.D.N.Y. Apr. 4, 2023) ("Whether the amount is fixed or projected, employers' threats to collect tens of thousands of dollars in contractual damages from hourly workers certainly can violate the TVPA's prohibitions on forced labor.").[8]

As set forth above, Medliant uses the threat of litigation and extraordinary financial penalties to coerce labor. Medliant's contract includes threats of legal action, stating that it has filed lawsuits against other employees who have breached the contract.[9] (Contract, ¶ 2(e), ECF No. 8-1.) While filing a breach of contract claim is not an abuse of legal process on its own, threatening to file a baseless lawsuit in order to coerce labor is. Neither of the cases that Medliant relies on supports a different conclusion. *See Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619-TWP-TAB, 2015 WL 1396599, at *5 (S.D. Ind. Mar. 25, 2015) (finding that filing lawsuits, without any language threatening to file lawsuits to enforce the contract, was not an abuse of legal process); *Land Baron Inv. v. Bonnie Springs Family LP*, 131 Nev. 686, 698 (2015) (same).

### III. CONCLUSION

Medliant's complaint must be dismissed on grounds of *forum non conveniens* or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim.

---

[8] Medliant's reliance on *Estavilla v. Goodman Group, LLC*, No. CV 21-68-M-KLD, 2022 WL 539192, at *15 (D. Mont. Feb. 23, 2022) is inapposite because that case held merely that the plaintiff's TVPA claims must be dismissed because they were compulsory counterclaims.
[9] This is the second lawsuit by Medliant in this District to enforce similar terms. *See Medliant Inc. v. Galam*, No. 1:22CV000379 (E.D. Tex.).

10

| | | |
|---|---|---|
| DATED: | October 10, 2023<br>Denver, Colorado | /s/ David H. Seligman |

**TOWARDS JUSTICE**

David H. Seligman (*pro hac vice*)
Juno Turner (*pro hac vice*)
Rachel Dempsey (*pro hac vice*)
P.O. Box 371689, PMB 44465
Denver, CO 80237-5680
(720) 441-2236
david@towardsjustice.org
juno@towardsjustice.org
rachel@towardsjustice.org

*Attorneys for Katrina Ponce de Leon*

11

## CERTIFICATE OF SERVICE

I certify that on October 10, 2023, I electronically filed a true and correct copy of Defendant's Reply in Support of Motion to Dismiss Plaintiff's Complaint, with the Clerk of Court for the U.S. District Court, Eastern District of Texas, through the Court's Electronic Case Filing system, which will serve all counsel of record listed below:

R. Brandon Bundren
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
bbundren@bradley.com

/s/ *David H. Seligman*

David H. Seligman