**UNITED STATES DISTRICT COURT**　　　　**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| MEDLIANT INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:23-CV-203 |
| | § | |
| KATRINA PONCE DE LEON, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Katrina Ponce de Leon's ("Ponce de Leon") Motion to Dismiss Plaintiff's Complaint (#8). Plaintiff Medliant Inc. ("Medliant") filed a response (#10), Ponce de Leon filed a reply (#13), and Medliant filed a sur-reply (#16). Subsequently, Ponce de Leon filed a Notice of Correction to Defendant's Motion to Dismiss Complaint and Reply to Motion to Dismiss Complaint (#19), in which she clarified that, contrary to the representations in her earlier briefing, she had "moved back from Florida to Beaumont, Texas." Medliant submitted a Response to Defendant's Notice of Correction (#21). Finally, Ponce de Leon filed a Notice of Supplemental Authority in Support of Her Motion to Dismiss for *Forum Non Conveniens* (#34), and Medliant filed a Response to Defendant's Notice of Supplemental Authority (#36). Having considered the pending motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that Ponce de Leon's motion should be granted.

I.    Background

Medliant is a Nevada corporation that "provides employment-related placement services throughout the United States, including to hospitals and other healthcare providers in southeast Texas." On January 18, 2022, Medliant entered into an Agreement for Employment

("Agreement") with Ponce de Leon.  Specifically, the parties agreed for Ponce de Leon to immigrate to the United States from the Republic of the Philippines to work as a full-time registered nurse for Medliant at Baptist Hospitals of Southeast Texas in Beaumont, Texas. Medliant avers that, pursuant to the Agreement, it covered various immigration, relocation, and licensing expenses for Ponce de Leon, in addition to sponsoring her for her green card.  Medliant alleges that, in return, Ponce de Leon agreed to work a minium of 5,200 straight-time hours for Medliant.  According to Medliant, Ponce de Leon further agreed that, if she voluntarily left Medliant, she would reimburse Medliant for her immigration costs and also pay, as liquidated damages, $2,500.00 for each remaining month of her term of employment under the Agreement.

On February 15, 2023, Ponce de Leon resigned from Medliant.  According to Medliant, at the time of her resignation, Ponce de Leon was approximately twenty-one months short of fulfilling her obligation under the Agreement.  Medliant subsequently filed its Complaint (#1), asserting that Ponce de Leon had breached the Agreement by failing to reimburse Medliant for her immigration costs and failing to pay the required liquidated damages following her resignation. In her present motion, Ponce de Leon first seeks to dismiss Medliant's complaint on *forum non conveniens* grounds, contending that the forum-selection clause in the parties' Agreement mandates that any dispute arising out of the contract be litigated in Nevada state court.  In the alternative, Ponce de Leon argues that Medliant's complaint must be dismissed because it fails to allege enforceable contract damages and is void as against public policy.

II.   Analysis

In diversity cases such as the case at bar, federal law governs the enforceability of forum-selection clauses.  *Noble House, L.L.C. v. Certain Underwriters at Lloyd's*, 67 F.4th 243,

249 (5th Cir. 2023); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016); *accord Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016); *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997), *cert. denied*, 523 U.S. 1072 (1998).  Under federal law, forum-selection clauses are presumed to be valid and enforceable.  *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.* ("*Atlantic Marine*"), 571 U.S. 49, 62 n.5 (2013) ("Our analysis presupposes a contractually valid forum-selection clause."); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1074 (5th Cir. 2020); *Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 543 (5th Cir. 2018); *Barnett*, 831 F.3d at 302 (acknowledging the court has often framed forum-selection clauses as prima facie valid); *Weber*, 811 F.3d at 773-74 (stating that forum-selection clauses are to be treated as "presumptively valid").[1]

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  *Atl. Marine*, 571 U.S. at 60.  Under this doctrine, "a court may decline to exercise its jurisdiction and dismiss a case that is otherwise properly before it so that the case can be adjudicated in another forum."  *Noble House, L.L.C.*, 67 F.4th at 247-48 (quoting *PCL Civ. Constructors, Inc.*, 979 F.3d at 1073).  The United States Supreme Court has clarified how venue is analyzed in cases where the parties have agreed to a forum-selection clause:

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether,

---

[1] Medliant makes no argument that the forum-selection clause at issue in this case is either invalid or unenforceable.

on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." [28 U.S.C.] § 1404(a).

The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).  The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 33[ ].  For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 33[ ].

*Atl. Marine*, 571 U.S. at 62-63.  "A valid forum-selection clause simplifies [the *forum non conveniens*] analysis in two ways." *Barnett*, 831 F.3d at 300.  "'First, the plaintiff's choice of forum merits no weight' because, by contracting for a specific forum, 'the plaintiff has effectively exercised its "venue privilege" before a dispute arises.'  Second, the private-interest factors 'weigh entirely in favor of the preselected forum,' so that the 'district court may consider arguments about public-interest factors only.'" *Id.* (citations omitted) (quoting *Atl. Marine*, 571 U.S. at 63-64).  As a result, "a valid forum-selection clause controls the *forum non conveniens* inquiry '[i]n all but the most unusual cases.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 66); *see Noble House, L.L.C.*, 67 F.4th at 248; *Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020).

The public-interest factors that the court must consider include:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.  *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 226 (5th Cir. 2020); *Barnett*, 831 F.3d at 309; *Weber*, 811 F.3d at 767.  The United States Court of Appeals

4

for the Fifth Circuit has repeatedly emphasized that these factors will "rare[ly]" justify a court's retention of a case in the face of a valid and enforceable forum-selection clause.  *Ney v. 3i Grp., P.L.C.*, No. 21-50431, 2023 WL 6121774, at *5 (5th Cir. Sept. 19, 2023) (noting that only in an "extraordinary case[]" will the public-interest factors "outweigh a mandatory and enforceable forum-selection clause"); *Noble House, L.L.C.*, 67 F.4th at 249 (quoting *Weber*, 811 F.3d at 775-76); *Barnett*, 831 F.3d at 309 (remarking that these factors warrant a "refusal to enforce a forum-selection clause only in 'truly exceptional cases'" (quoting *Weber*, 811 F.3d at 776)); *see also Atl. Marine*, 571 U.S. at 51 (explaining that the "public-interest factors will rarely defeat a transfer motion").

### A.    The Forum-Selection Clause Is Mandatory

First, the court must determine whether the forum-selection clause at issue is mandatory or permissive, as *Atlantic Marine* applies only to mandatory forum-selection clauses.  *Weber*, 811 F.3d at 768; *Davis v. Meta Platforms, Inc.*, No. 4:22-CV-01001, 2023 WL 4670491, at *10 (E.D. Tex. July 20, 2023).  Whereas federal law governs the enforceability of a forum-selection clause, the court applies the forum state's choice-of-law rules to determine what substantive law governs when the interpretation of a forum-selection clause is at issue in a diversity case.  *Weber*, 811 F.3d at 770-71 ("But the presence or absence of a specific choice-of-law clause does not alter the core obligation of a federal court, sitting in diversity, to ascertain which body of substantive law to apply by implementing the choice-of-law rules of its home jurisdiction."); *accord Barnett*, 831 F.3d at 301-02; *see Sabal Ltd. LP v. Deutsche Bank AG*, 209 F. Supp. 3d 907, 918 (W.D. Tex. 2016).  Here, the Agreement states that it "shall be governed by the laws of Nevada" and that Medliant "chooses to utilize Nevada law for interpretation and analysis of the [Agreement]."  The

parties agree that, pursuant to this choice-of-law provision, Nevada law applies to the interpretation of the Agreement.[2]

Under Nevada law, "[t]he objective of interpreting contracts 'is to discern the intent of the contracting parties.  Traditional rules of contract interpretation are employed to accomplish that result.'"  *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015) (quoting *Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012)).  Thus, "[t]he common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it."  *Id.* at 108 (quoting *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)).  If language in a contract is ambiguous and "susceptible to more than one reasonable interpretation," the court must construe "[a]ny ambiguity . . . against the drafter."  *Id.* at 106 (quoting *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007)).

"When a contract contains a forum selection clause, courts determine whether the clause is mandatory, meaning that the specified forum is the exclusive forum agreed upon by the parties, or permissive, meaning that the parties merely consented to venue in a particular forum."  *Fed. Nat'l Mortg. Ass'n v. Eighth Jud. Dist. Ct. in and for Cnty. of Clark*, 528 P.3d 586, No. 64130, 2022 WL 19697697, at *1 (Nev. Dec. 22, 2022) (unpublished table decision).  In order to be

---

[2] The Supreme Court of Texas has held that contractual choice-of-law provisions should generally be enforced.  *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-78 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991); *see Barnett*, 831 F.3d at 304; *Int'l Ints., L.P. v. Hardy*, 448 F.3d 303, 306-07 (5th Cir. 2006).  "The most basic policy of contract law is the protection of the justified expectations of the parties."  *Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 419 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *Chase Manhattan Bank, N.A. v. Greenbriar N. Section II*, 835 S.W.2d 720, 723 (Tex. App.—Houston [1st Dist.] 1992, no writ)); *accord Nabors Drilling Techs. USA Inc. v. Deepwell Energy Servs. LLC*, 568 F. Supp. 3d 756, 771 (S.D. Tex. 2021) (quoting *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 176 (Tex. App.—Houston [14th Dist.] 2002, no pet.)); *DeSantis*, 793 S.W.2d at 677.

deemed mandatory, a forum-selection clause must "contain[] words of exclusivity." *Am. First Fed. Credit Union*, 359 P.3d at 108. For example, the Nevada Supreme Court held that a clause providing that litigation for "any controversy" arising under the related documents "shall be litigated" in the District of Columbia and that "the agreement irrevocably consents to the jurisdiction and forum of D.C. courts and waives 'any other venue'" was mandatory because the clause went "further than signaling merely that D.C. courts are an appropriate forum." *Fed. Nat'l Mortg. Ass'n*, 2022 WL 19697697, at *2. In contrast, the Nevada Supreme Court determined that clauses stating that the parties "submit themselves to the jurisdiction of the courts of the State of Utah" and that one party "agrees to submit to the jurisdiction of the court in the county in which [the other party] is located" were permissive because they contained no words of exclusivity. *Am. First Fed. Credit Union*, 359 P.3d at 108.

> In the case at bar, the Governing Law/Venue paragraph of the parties' Agreement states:
>
> This Agreement shall be governed by the laws of Nevada. Medliant is incorporated in Nevada and as such, chooses to utilize Nevada law for interpretation and analysis of the herein agreement as well as chooses to utilize the venue of the 8th Judicial District Court in Las Vegas, Nevada as and for any disputes that may arise from time to time. By signing below, you agree to Medliant's choice of venue and choice of law.[3]

As Ponce de Leon informs the court in her notice of supplemental authority, the United States District Court for the District of Nevada recently determined that this precise forum-selection clause is mandatory. *Mabute v. Medliant, Inc.*, No. 2:23-cv-2148-APG-DJA, 2024 WL 1376839,

---

[3] Medliant does not object to the court's consideration of the Agreement, which Ponce de Leon attached to her motion to dismiss. Indeed, the Agreement forms the basis of Medliant's breach of contract claim and is accordingly referenced throughout its complaint. In any event, "when evaluating a motion to dismiss based on a forum-selection clause, a court may consider matters outside the pleadings." *Ney*, 2023 WL 6121774, at *3; *see Matthews v. Tidewater Crewing, Ltd.*, 658 F. Supp. 3d 332, 345 (E.D. La. 2023) ("In deciding a motion to dismiss on *forum non conveniens* grounds, a court may consider all of the evidence before it and is not limited to the allegations in the complaint.").

at *2 (D. Nev. Apr. 1, 2024), *appeal filed*, No. 24-2119 (9th Cir. Apr. 5, 2024).[4]  Specifically, the District of Nevada court found that, by signing their employment agreements, the plaintiffs in that case "were not merely consenting to the jurisdiction of courts in Nevada, they were agreeing to Medliant's choice of the state court forum."  *Id.* at *1.  The court was persuaded, in part, by the clause's specification of a particular court—the Eighth Judicial District Court—and drew a comparison to the Ninth Circuit's conclusion in *Docksider, Ltd. v. Sea Technology, Ltd.*, that the following provision was mandatory:  "Venue of any action brought hereunder shall be deemed to be in Gloucester, Virginia."  *Id.* (quoting *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989)).  Additionally, the court reasoned that "[n]o circumstances exist that give a special or different meaning" to the forum-selection clause, further noting that, "to the extent [the contracts] could possibly be considered ambiguous (which I do not find), they must be interpreted against Medliant, the drafter."  *Id.* (citing *Anvui, LLC*, 163 P.3d at 407).  The court rejected Medliant's attempt to rely on cases where forum-selection clauses were held to be permissive, stating that such provisions "were not as plain and clear as this one" and concluding that "[i]t would be unfair for Medliant to void [the] contractual expectations" that the plaintiffs had agreed to in their employment contracts.  *Id.* at *1-2.

---

[4] The Nevada action arose from former Medliant employees Jeddy Anne Delgado ("Delgado") and Eliahkim Mabute's ("Mabute") filing of a class action lawsuit against Medliant in the Eighth Judicial District Court in Las Vegas, Nevada.  After Medliant removed the class action to the District of Nevada, Delgado and Mabute moved to remand, arguing that the forum-selection clause was mandatory and required the case to be litigated in the specified Nevada state court.  In its order granting the motion to remand, the District of Nevada concluded that the forum-selection clause in Delgado's and Mabute's employment contracts was mandatory.  *Id.*  Importantly, Medliant acknowledges in its response to Ponce de Leon's notice of supplemental authority that the forum-selection clauses in Delgado's and Mabute's employment contracts are "identical to" the forum-selection clause in Ponce de Leon's Agreement.  Medliant also informs the court that it appealed the District of Nevada's order to the United States Court of Appeals for the Ninth Circuit.

Ponce de Leon urges this court to "follow the District of Nevada" and likewise determine that the forum-selection clause is mandatory.  Medliant, on the other hand, asserts that the District of Nevada "erred" and emphasizes that it has appealed that court's remand order to the Ninth Circuit.  In particular, Medliant contends that the forum-selection clause neither contains "words of exclusivity" nor indicates that Medliant waived the right to bring suit in a different forum.

This court concurs with its sister court's determination that the forum-selection clause is mandatory.  While Medliant insists that the clause merely provides it with "a choice [of] whether to file in Nevada or to file in another jurisdiction," the court is persuaded by Ponce de Leon's argument that the clause signals "not that Medliant *may* choose the venue of the 8th Judicial District Court for contract disputes, but that it *does* choose such venue."  Indeed, the plain language of the phrases "chooses to utilize" and "choice of venue" demonstrates that Medliant made its venue choice at the time of contracting.  The court is unconvinced that these phrases indicate that Medliant may choose from an array of other unspecified fora in the future.

Further, the court disagrees with Medliant's assertion that the forum-selection clause contains no "words of exclusivity."  Rather, the clause's description of the Eighth Judicial District Court as Medliant's "choice of venue" specifically forecloses the possibility of litigation in another forum.  *Cf. Coppola v. Baron*, No. 2:07-CV-00664-BES-RJJ, 2007 WL 4180590, at *2-3 (D. Nev. Nov. 20, 2007) (determining that a clause stating that "[v]enue of any action brought hereon shall be Clark County, Nevada" was permissive in part because "it [did] not specify whether the forum is the state court or the federal district court, both of which are located in Clark County").  Indeed, as Ponce de Leon points out, similarly termed "choice of law" provisions are generally not construed as providing mere suggestions of the law that might apply when interpreting a

contract.  Finally, to the extent the forum-selection clause is ambiguous—which this court does not believe to be the case—it must be construed against Medliant as the drafter.[5]  Accordingly, the court concludes that the forum-selection clause is mandatory.

In the alternative, the court finds that the doctrine of collateral estoppel applies to preclude Medliant from relitigating the mandatory nature of the forum-selection clause.  *See, e.g.*, *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 829-30 (5th Cir. 2006) (holding that "[t]he original federal judgment," which "dismiss[ed] the case because a forum selection clause mandated venue in England," was entitled to preclusive effect and noting that "any issue of fact or law, trivial or non-trivial, is preclusive on satisfying the [collateral

---

[5] The court further agrees with Ponce de Leon that the cases upon which Medliant relies to argue that the forum-selection clause is permissive are distinguishable because they involve clauses that merely memorialize the parties' consent or submission to the jurisdiction of a particular court, as opposed to clauses mandating that litigation must occur in a specified forum.  For example, the forum-selection clause at issue in *America First Federal Credit Union* stated only that the parties "agree and submit themselves to the jurisdiction of the courts of the State of Utah."  359 P.3d at 106.  In contrast, the forum-selection clause at issue here contains no language regarding submitting to the jurisdiction of a particular court; instead, it authoritatively refers to the selected Nevada state court as Medliant's "choice of venue" and the forum that Medliant "chooses to utilize."  The other cases cited by Medliant are distinguishable under the same logic.  *See, e.g.*, *Hunt Wesson Foods, Inc.*, 817 F.2d at 76-77 (determining that a forum-selection clause providing that "[t]he courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract" was permissive); *Wiggins v. Seeley*, No. 3:16-cv-00642-HDM-WGC, 2017 WL 969186, at *3 (D. Nev. Mar. 13, 2017) (concluding that a forum-selection clause stating that "Jurisdiction is Douglas County, Nevada" was permissive because it "fail[ed] to contain any language about Douglas County having exclusive jurisdiction" and explaining that "a forum selection clause providing a particular court or state has jurisdiction, but say[ing] nothing about it being exclusive jurisdiction, is permissive and generally will not be enforced"); *Viswanathan v. Moving USA Inc.*, No. 2:15-cv-02015-RCJ-NJK, 2016 WL 3267297, at *2-3 (D. Nev. June 7, 2016) (holding that a clause wherein the parties "agree[d] to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Broward County, State of Florida" was permissive and observing that "courts typically find that forum selection clauses containing 'submit to' or similar language are permissive, not mandatory"); *Coppola*, 2007 WL 4180590, at *2 ("When only jurisdiction is specified, the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." (quoting *Docksider, Ltd.*, 875 F.2d at 764)).

estoppel doctrine test]").[6]  Issue preclusion, or collateral estoppel, applies when the following elements are met:  "(1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that last action."  *In re Amberson*, 73 F.4th 348, 351 (5th Cir. 2023) (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004)); *see Lartigue v. Northside Indep. Sch. Dist.*, ___ F.4th ___, No. 22-50854, 2024 WL 1261291, at *6 (5th Cir. Mar. 26, 2024) (quoting *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir.), *cert. denied*, 527 U.S. 1004 (1999)).  Additionally, there must not be any special circumstances that render the application of collateral estoppel unfair.  *Bradberry v. Jefferson County*, 732 F.3d 540, 548 (5th Cir. 2013) (stating also that these "equitable considerations apply only to 'offensive collateral estoppel'"); *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 491 (5th Cir. 2016).  Finally, the facts and the legal standard used to assess those facts must be the same in both proceedings.  *Hammervold v. Blank*, 3 F.4th 803, 810-11 (5th Cir. 2021) (quoting *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 n.1 (5th Cir. 1991)).  Nevertheless, the actual claims and the subject matter of each suit may differ.  *Catlin Specialty Ins., Co. v. L.A.*

---

[6] Although neither party raises this argument, the court may apply the doctrine of collateral estoppel *sua sponte*.  *See In re Hensley*, 551 B.R. 792, 800 (E.D. Tex. 2015) ("This circuit also recognizes two instances in which the district or appellate court can *sua sponte* dismiss an action on issue preclusion grounds.  One exception allows a court to raise the issue preclusion defense on its own when all the relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of issue preclusion." (citation omitted) (quoting *Williams v. Midwest Emps. Cas. Co.*, 34 F. App'x 152, No. 00-31391, 2002 WL 496395, at *6 (5th Cir. Mar. 21, 2002) (unpublished table decision))); *see also Torres v. Johnson*, No. 2:21-CV-00138, 2021 WL 5548562, at *2 (S.D. Tex. July 26, 2021) ("[A] court may dismiss *sua sponte* when the two lawsuits were brought before the same court, or when all relevant facts in the record are uncontroverted." (citing *McIntyre v. Ben E. Keith Co.*, 754 F. App'x 262, 264-65 (5th Cir. 2018))), *adopted by* No. 2:21-CV-138, 2021 WL 5036014 (S.D. Tex. Oct. 29, 2021).

*Contractors, Ltd.*, No. H-14-261, 2016 WL 4276131, at *5 (S.D. Tex. July 25, 2016) (citing *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999)).

Finality is another essential component of collateral estoppel. *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323 (5th Cir. 2005); *Baros v. Tex. Mexican Ry. Co.*, 400 F.3d 228, 233 (5th Cir. 2005); *J.R. Clearwater Inc. v. Ashland Chem. Co.*, 93 F.3d 176, 179 (5th Cir. 1996) (citing *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269 (5th Cir. 1986)). Notably, Medliant's appeal of the District of Nevada's remand order is currently pending before the Ninth Circuit. In general, however, "a judgment is entitled to preclusive effect even though an appeal is pending." *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 571 (5th Cir. 2021) (quoting 18 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4404 (3d ed. 2004)); *see In re Kahn*, 533 B.R. 576, 584 (Bankr. W.D. Tex. 2015) ("[F]or purposes of collateral estoppel, a judgment may be final even though an appeal is pending or a lower court has yet to fully dispose of the matter from which the issue arises." (quoting *Guion v. Sims*, 479 B.R. 415, 422-23 (Bankr. S.D. Tex. 2012))). Thus, the fact that the appeal of the District of Nevada's order remains pending does not preclude application of the collateral estoppel doctrine.

Here, both the case at bar and the Nevada action involve the same issue of whether identical forum-selection clauses are mandatory or permissive—albeit in different procedural postures, as this court is presented with this issue in the context of a motion to dismiss for *forum non conveniens*, whereas the District of Nevada decided this issue in ruling on a motion to remand. *See Mabute*, 2024 WL 1376839, at *1-2. Despite these procedural distinctions, however, both cases require the respective courts to apply Nevada contract law to interpret the

clause at issue.  Additionally, the mandatory nature of the forum-selection clause was "actually litigated" in the Nevada action, as this issue was "raised, contested by the parties, submitted for determination by the court, and determined." *In re Keaty*, 397 F.3d 264, 272 (5th Cir. 2005). Moreover, the District of Nevada's determination that the forum-selection clause is mandatory was a "necessary part" of its judgment, as it remanded the case solely based on its determination that the forum-selection clause was mandatory "and Medliant [was] bound by it," thus rendering removal from the Nevada state court "improper." *Mabute*, 2024 WL 1376839, at *2.

In sum, Medliant is collaterally estopped from asserting that the forum-selection clause is permissive because this issue was actually litigated in the Nevada action; this issue was essential to the prior judgment; and Medliant had a full and fair opportunity to litigate this issue in the prior case.  Although Ponce de Leon is not a litigant in the Nevada action, "the doctrine of issue preclusion may not always require complete identity of the parties." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1273 (5th Cir. 1990) (citing *Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989)); *see also Phillips v. City of Dallas*, 781 F.3d 772, 782 (5th Cir. 2015) (explaining that, under the principle of "nonmutual collateral estoppel," "if a litigant has fully and fairly litigated an issue and lost, then third parties unrelated to the original action can bar the litigant from re-litigating that same issue in a subsequent suit." (quoting *Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 890 (5th Cir. 2004))).  Importantly, Medliant—the party that disagrees with the District of Nevada's ruling and thus would resist enforcement of the collateral order doctrine—is a party in the Nevada action and thus had a "full and fair opportunity to litigate" this issue.  *Cf. United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C.*, 569 F. Supp. 2d 646, 649 (E.D. La. 2008) (refusing to apply the doctrine of collateral estoppel to another court's determination that the

13

forum-selection clause mandated exclusive jurisdiction in a particular Louisiana state court in part because the plaintiff was not a party to the other action and thus was "never given a full and fair opportunity to litigate the forum selection clause issue in that case").  Thus, the court concludes that—under both this court's independent interpretation of the clause and the doctrine of collateral estoppel—the forum-selection clause mandates that this case be litigated in the Eighth Judicial District Court in Las Vegas, Nevada.

> B.   The Public-Interest Factors Do Not Outweigh the Mandatory Forum-Selection Clause

Having determined that the Agreement's forum-selection clause is mandatory, the court next considers *Atlantic Marine*'s public-interest factors, bearing in mind that these factors will outweigh a mandatory forum-selection clause in only a "rare," "extraordinary," or "truly exceptional" case.  *Ney*, 2023 WL 6121774, at *5; *Noble House, L.L.C.*, 67 F.4th at 249; *Barnett*, 831 F.3d at 309.  As the party resisting enforcement of the forum-selection clause, Medliant bears the burden of demonstrating that the public-interest factors "overwhelmingly disfavor" dismissal.  *Wellogix, Inc. v. SAP Am., Inc.*, 58 F. Supp. 3d 766, 782 (S.D. Tex. 2014) (quoting *Atl. Marine*, 571 U.S. at 67), *aff'd*, 648 F. App'x 398 (5th Cir. 2016); *see Weber*, 811 F.3d at 776 (describing the "high burden of persuasion on the party seeking to avoid enforcement of the [forum-selection clause]"); *Holt Tex., Ltd. v. Vita Inclinata Techs., Inc.*, No. SA-23-CV-01130-JKP, 2023 WL 8040766, at *3 (W.D. Tex. Nov. 20, 2023).

> 1.   The Administrative Difficulties Flowing from Court Congestion

The first public-interest factor—administrative difficulties flowing from court congestion—"concerns 'whether there is an appreciable difference in docket congestion between the two forums.'"  *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA, 2022 WL

1667561, at *10 (W.D. Tex. May 25, 2022) (quoting *Parsons v. Chesapeake & Ohio Ry. Co.*, 375

U.S. 71, 73 (1963)).  The court "considers not whether transfer will reduce a court's congestion,

but whether a trial may be speedier in another [court] because of its less crowded docket." *Davis*,

2023 WL 4670491, at *16 (quoting *Stellar Restoration Servs., LLC v. Courtney*, 533 F. Supp. 3d

394, 427 (E.D. Tex. 2021)).  The comparison between the two forums considers the "speed with

which a case can come to trial and be resolved." *Scramoge Tech. Ltd.*, 2022 WL 1667561, at *10

(quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)); *see Doe #1 v. Marriott*

*Int'l, Inc.*, No. 3:22-CV-468-KHJ-MTP, 2023 WL 4683043, at *8 (S.D. Miss. June 23, 2023),

*aff'd*, No. 23-60389, 2024 WL 1374809 (5th Cir. Apr. 1, 2024).  Notably, "[c]ourt congestion

is considered the 'most speculative' of the factors, since 'case-disposition statistics may not always

tell the whole story.'" *Chase v. Andeavor Logistics, L.P.*, No. 5:18-CV-1050-DAE, 2019 WL

5847879, at *7 (W.D. Tex. July 9, 2019) (quoting *Vassallo v. Goodman Networks, Inc.*, No.

5:14-CV-743-DAE, 2015 WL 502313, at *5 (W.D. Tex. Feb. 5, 2015)) (determining that the

court congestion factor was "too speculative to be helpful under the present circumstances"); *see*

*Davis*, 2023 WL 4670491, at *16 (describing this factor as "the most speculative").

Medliant cites statistics from the Administrative Office of the United States Courts and

Nevada's Administrative Office of the Courts as evidence that this factor weighs against

dismissal.[7]  Specifically, Medliant notes that during the twelve-month period ending on March 31,

2023, judges in the Eastern District of Texas were assigned approximately 399 civil actions per

---

[7] As noted above, "when evaluating a motion to dismiss based on a forum-selection clause, a court
may consider matters outside the pleadings." *Ney*, 2023 WL 6121774, at *3.

judge, with a median time of 8.7 months for the disposition of a civil case.[8]  U.S. CTS., UNITED STATES DISTRICT COURTS—NATIONAL JUDICIAL CASELOAD PROFILE 35 (2023), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf. Medliant emphasizes that, in contrast, judges in the Eighth Judicial District Court of Nevada were each assigned approximately 1,540 cases during the same time period.  SUP. CT. OF NEV. ADMIN. OFF. OF THE CTS., ANNUAL REPORT OF THE NEVADA JUDICIARY FISCAL YEAR 2022 APPENDIX TABLES 10 (2022), https://nvcourts.gov/__data/assets/pdf_file/0016/38014/2022_Annual_Report_ Appendix.pdf.  Medliant argues that this factor accordingly weighs against dismissal because the Eastern District of Texas "has significantly fewer cases per judgeship and a quick disposition period."[9]

As Ponce de Leon points out, however, while Medliant provides the median disposition period for the Eastern District of Texas, it provides no such disposition-period statistic for the Eighth Judicial District Court of Nevada.[10]  Without similar information about the median disposition period of civil cases in the Nevada state court, the court cannot perform a meaningful

---

[8] Notably, Medliant neglects to mention that the same caseload profile also reveals that the median time elapsed from filing to trial for civil cases in the Eastern District of Texas is 19 months—a time period over twice as long as the median filing-to-disposition statistic that it provides.  *See id.*

[9] Medliant also argues that this factor weighs against dismissal because "[c]ounsel for the parties have conferred under Rule 26(f), discovery is underway," and "[t]rial of this matter will take place by summer 2024."  The parties, however, submitted proposed scheduling orders with differing timelines in advance of their scheduling conference with the court.  Following the scheduling conference, the court entered a Scheduling Order (#24) setting a Final Status Conference date of February 7, 2025—approximately eight months after the trial date that Medliant referenced.  In other words, the present case is not proceeding to trial before this court as swiftly as Medliant anticipated in its briefing, rendering this argument uncompelling.

[10] Ponce de Leon also emphasizes that, while 97,834 cases (85,041 civil and 12,793 criminal) were filed in the Eighth Judicial District Court of Nevada in 2022, the court disposed of 102,387 cases in the same year.  *Id.* at 2.

comparison of the "speed with which [this] case can come to trial and be resolved" in the two jurisdictions. *Scramoge Tech. Ltd.*, 2022 WL 1667561, at *10 (quoting *In re Genentech, Inc.*, 566 F.3d at 1347). Additionally, the court notes that it has a particularly heavy criminal caseload—specifically, 80% of the Beaumont Division's criminal docket and 100% of the Lufkin Division's criminal docket. *See* Gen. Order 23-01 (assigning civil and criminal actions in the Eastern District of Texas). Thus, the general statistics that Medliant cites are an imperfect measure of this particular court's median filing-to-disposition period for civil cases, given that criminal law considerations may cause civil cases to remain untried, as priority must be given to criminal cases due to the requirements of the Speedy Trial Act. As a result, the court concludes that the first public-interest factor is neutral.

2.     The Local Interest in Having Localized Disputes Decided at Home

As for the second factor, "[a] local interest is demonstrated by a relevant factual connection between the events and the venue." *Venable's Constr. Inc. v. Oneok Arbuckle II Pipeline, LLC*, No. 2:20-CV-018-Z-BR, 2020 WL 2841398, at *7 (N.D. Tex. June 1, 2020) (quoting *LeBlanc v. C.R. Eng., Inc.*, 961 F. Supp. 2d 819, 832-33 (N.D. Tex. 2013)); *Moore v. Payson Petroleum Grayson, LLC*, No. 3:17-CV-1436-M-BH, 2018 WL 514258, at *7 (N.D. Tex. Jan. 23, 2018). "[T]his factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *United Servs. Auto. Ass'n v. Truist Bank*, No. 2:22-cv-00291-JRG-RSP, 2023 WL 2871060, at *2 (E.D. Tex. Apr. 8, 2023) (quoting *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020)) (emphasizing the difference between the localized interests in a patent infringement action involving the use of "a mobile phone to deposit checks into a bank account

from any location" and a "breach of contract claim with performance within a particular district");
*see Hunt, Gather LLC v. Andreasik*, No. 1:23-CV-627-RP, 2023 WL 4237357, at *7 (W.D. Tex.
June 28, 2023) (determining that the "local interest favor[ed] keeping the case in Texas" where
the suit "involv[ed] an Austin company, an employee who knowingly contracted to work with the
Austin company, and alleged damage to that company's business in Austin"); *O'Quin v. Fin.
Servs. Online, Inc.*, No. 18-36-JWD-RLB, 2018 WL 5316360, at *13 (M.D. La. Oct. 26, 2018)
(concluding that residents of the Southern District of Texas "ha[d] an interest and stake in the
resolution of [a] case" involving "a claim about a breach of a Texas Employment Contract based
on the alleged actions of [parties] in Texas," where "the events giving rise to this suit mainly
occurred in the Southern District").  "Important considerations include the location of the injury,
the witnesses, and the Plaintiff's residence." *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th
Cir. 2022) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317-18 (5th Cir. 2008), *cert.
denied sub nom. Singleton v. Volkswagen of Am., Inc.*, 555 U.S. 1172 (2009); *Zurich Am. Ins.
Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 727 (W.D. Tex. 2013)).

Here, Medliant asserts that Texas's interest in this dispute "weighs heavily against
dismissal," given that Ponce de Leon resided in the Eastern District of Texas, worked for
Medliant in this district, and breached the Agreement in this district.  Medliant further contends
that Ponce de Leon has not identified any witnesses who are located in Nevada.[11]  In response,

_____

[11] The court considers the location of witnesses for the limited purpose of determining which state
has a "localized interest" and does not assess which forum is more "convenient" for the parties.  As
previously explained, the court may not entertain a "convenience" argument in the case at bar because the
parties' agreement to a mandatory and enforceable forum-selection clause "waive[s] the right to challenge
the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their
pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64; *Noble House, L.L.C.*, 67 F.4th at 251; *Weber*, 811
F.3d at 767.

Ponce de Leon argues that Nevada's interest in this dispute is greater than Texas's merely because Medliant is incorporated in Nevada.  Notably, however, the parties' briefing identifies no facts or events giving rise to this suit that occurred in Nevada.  Accordingly, considering that Ponce de Leon worked for Medliant in this district and breached the Agreement in this district, the court finds that the second public-interest factor weighs against dismissal.

### 3.   The Familiarity of the Forum with the Law

The third public-interest factor considers "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." *Fintech Fund, F.L.P.*, 836 F. App'x at 226.  As discussed above, the parties agree that, pursuant to the Agreement, Nevada law applies to this diversity case.  Although this factor would thus appear to weigh in favor of dismissal, given that the Nevada state court is unquestionably more familiar with Nevada law than this court, Medliant cites *AudioEye, Inc. v. AccessiBe Ltd.* and *Venable's Construction Inc. v. Oneok Arbuckle II Pipeline, LLC*, for the proposition that the familiarity of the forum state with the governing law should only weigh in favor of transfer or dismissal if the applicable law is "exceptionally arcane." *See AudioEye, Inc. v. AccessiBe Ltd.*, No. 6:20-CV-997-ADA, 2022 WL 827805, at *9 (W.D. Tex. Mar. 9, 2022) (concluding that, where the action involved applying New York law, "[t]his factor is neutral or only slightly favors transfer because this Court is confident in its ability to apply New York state law"); *Venable's Constr. Inc.*, 2020 WL 2841398, at *8 (determining that this factor was neutral where the defendant failed to describe any differences between Oklahoma and Texas contract law).

As the Supreme Court observed in *Atlantic Marine*, "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine*, 571 U.S. at 67; *Def. Distributed*,

30 F.4th at 436; *see In re TikTok, Inc.*, 85 F.4th 352, 366 (5th Cir. 2023) (holding that the district court "erred by assuming that it was more capable at applying Texas law than are the judges of the Northern District of California when the court identified no exceptionally arcane aspects of Texas law governing [the plaintiff's] state-law claims").  Medliant maintains that Ponce de Leon has identified no differences between Nevada and Texas contract law that would render this court less equipped to apply Nevada law in the present case.  The court agrees and accordingly determines that this factor is neutral.

> 4.   The Avoidance of Unnecessary Problems in Conflict of Laws or in the Application of Foreign Law

The parties agree that this case presents no conflict of laws or foreign law issues. Accordingly, the fourth public-interest factor is neutral.

> 5.   The Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

Neither party addresses the final factor.  Notably, neither party has made a jury demand in this case.  In fact, the parties agreed in their Rule 26(f) Joint Conference Report (#20) that "this case will . . . [be] tr[ied] to the Court."  As a result, the fifth public-interest factor is neutral.  *See Stellar Restoration Servs., LLC*, 533 F. Supp. 3d at 428 (reasoning that "because neither party has made a jury demand, there is no juror—Texan or Missourian—who will be burdened by this case"); *Stratos Enters. Inc. v. Spirit Halloween Superstores LLC*, No. 16-1329, 2016 WL 8188665, at *4 (W.D. La. Dec. 13, 2016) ("The last factor is neutral, as Plaintiffs have not demanded a jury trial."), *adopted by* No. 16-1329, 2017 WL 442771 (W.D. La. Feb. 1, 2017).

In sum, one public-interest factor weighs against dismissal and four public-interest factors are neutral.  Accordingly, "[n]one of the public-interest factors 'so greatly outweigh the

private-interest factors as to justify retaining the case . . . despite the parties' agreement.'" *Ipsen Biopharm Ltd. v. Galderma Laby's, L.P.*, 660 F. Supp. 3d 538, 555 (N.D. Tex. 2023) (quoting *Weber*, 811 F.3d at 776); *see White v. Health Carousel, LLC*, No. 19-CV-00066-DC, 2019 WL 7824787, at *1, *4-5 (W.D. Tex. Oct. 18, 2019) (granting the defendant's motion to transfer venue pursuant to a mandatory forum-selection clause because, "although Texas has a particular interest in having localized interests decided at home, that is not so exceptional as to allow the Court to disregard the parties' agreement"). Medliant has thus "failed to show that the *Atlantic Marine* public-interest factors weigh in favor of finding this matter truly exceptional." *Hotel Mgmt. of New Orleans, L.L.C. v. Gen. Star Indem. Co.*, No. 22-30354, 2023 WL 3270904, at *6 (5th Cir. May 5, 2023). Accordingly, the court concludes that dismissal under *forum non conveniens* is appropriate.[12]

III.   Conclusion

Consistent with the foregoing analysis, Ponce de Leon's Motion to Dismiss Plaintiff's Complaint (#8) is GRANTED. This case is dismissed without prejudice under the doctrine of *forum non conveniens*. All pending motions are DENIED as moot.

SIGNED at Beaumont, Texas, this 1st day of May, 2024.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

---

[12] Because the court determines that this action must be dismissed on *forum non conveniens* grounds, it does not reach Ponce de Leon's alternative argument that the court should dismiss the complaint for failure to state a claim.